**Faith J. FRANCIS, Plaintiff,**

v.

**KOPPERS COMPANY, INC., A
Delaware Corporation**

**and**

**International Association of Machinists
and Aerospace Workers AFL–CIO, A
Voluntary Association and Labor Organization**

**and**

**Local Lodge # 1784 of District 12 International Association of Machinists and
Aerospace Workers, Defendants.**

**Civ. No. JH–81–2297.**

United States District Court,
D. Maryland.

Oct. 14, 1982.

---

William Franklin Gosnell, Baltimore, Md., for plaintiff.

Gil A. Abramson, Stephen M. Silvestri, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Koppers Co., Inc.

Anthony A. Abato, Jr., Joel A. Smith, and Abato & Abato, P. A., Baltimore, Md., for defendant Local Lodge 1784, Intern. Ass'n of Machinists and Aerospace Workers.

## MEMORANDUM

JOSEPH C. HOWARD, District Judge.

Plaintiff Faith J. Francis brought this action against defendants Koppers Company, Inc. ("Company"), International Association of Machinists and Aerospace Workers, AFL–CIO ("Union"), and Local Lodge # 1784 ("Local"), under § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 (1976). The three defendants have filed motions for summary judgment on the ground that plaintiff's claims are time barred. No hearing is necessary for the resolution of these motions. Local Rule 6.

## BACKGROUND

Plaintiff alleges that Koppers discharged her from employment without good cause in violation of the collective bargaining agreement between the Local and the Company, and that both the Union and the Local failed to represent her fairly in processing her grievance against the Company. She seeks reinstatement and back wages from the Company, and compensatory and punitive damages from the Union and Local.

Francis began work at Koppers on September 29, 1969. Due to an illness, she was absent from work from August 12, 1980 until September 11, 1980, when she was terminated. At the time of her discharge, she was an inspector of seals on goods manufactured by the Company.

The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement between Koppers and the Local which sets forth the following requirements for obtaining a leave of absence from the Company:

> Upon application by an employee accompanied by acceptable written medical evidence that an employee is unable to work, and after approval by the Company, an employee who has been absent due to illness or injury for thirty days will be granted a leave of absence... Continuation in a leave of absence status will last so long as the employee has on file with the Company valid written medical evidence that such employee is still disabled and cannot work.

Collective Bargaining Agreement, Article XV.

It is undisputed that Francis did not file medical evidence justifying her leave with Koppers until September 11, 1980, the thirty-first day of her leave. She was terminated on that day for failure to timely file written evidence of her disability. Whether the collective bargaining agreement requires that medical evidence be *filed* within thirty days on penalty of discharge, as defendant Union asserts, is not obvious. But as the time of filing question is independent of the statute of limitations issue which is dispositive, the Court need not reach that question.

The collective bargaining agreement also sets forth a five-step grievance procedure: (1) complaint by the employee to his foreman, (2) presentation of a written grievance to the superintendent of the employee's department, (3) meeting between union plant grievance committee and the manager of the company's industrial relations department and other company representatives; and (5) prearbitration meeting between union and management representatives to resolve grievances and refine arbitration issues. Collective Bargaining Agreement, Article XIX.

On September 12, 1980, pursuant to step one of the grievance procedure, plaintiff complained by telephone to her foreman who stated that there was nothing he could do for her. On September 15, 1980, in accordance with step two, plaintiff presented a written grievance to the Company contesting her termination. In line with step three, on October 23, 1980, the plant committee of the Union's local met with Koppers' manager of labor relations, and another Company representative, to discuss plaintiff's grievance. On April 24, 1981, pursuant to steps four and five, Union representatives met with Koppers' manager of labor relations and informed him of the Union's decision to withdraw plaintiff's grievance.

On May 17, 1981, at a Union meeting, Francis was informed that her grievance had been dropped by the grievance committee, and that the matter could not be reopened. Thereafter, plaintiff did not file any complaints with the Local or with the Union concerning the Local's representation. She filed the within action on September 11, 1981, 117 days after the May 17 meeting.

Defendants contend that under recent decisions of this Court, viz.: *Ross v. Bethlehem Steel Corp.*, Civil No. JH–81–173 (Nov. 25, 1981) (Howard, J.); *Ford v. B. P. Oil Co.*, Civil No. JH–81–90 (Dec. 14, 1981) (Howard, J.); and the appropriate Maryland statute of limitations, *Md.Cts. & Jud. Proc.Code Ann.* § 3–224(a)(1); the instant suit is time barred because plaintiff failed to file suit within thirty days of being notified that her grievance had been dropped.

## DISCUSSION

Congress did not enact a statute of limitations to govern actions brought under § 301 of the Labor Management Relations Act. Courts must therefore determine the timeliness of such actions as a

matter of federal law by reference to the most analogous state statute of limitations. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). In Maryland, for reasons which follow, the most analogous statute of limitations is found in the Maryland Uniform Arbitration Act, Courts and Judicial Proceedings Article § 3–224(a)(1), Md. Ann.Code, which provides that a petition to vacate an arbitration award shall be filed within thirty days of receipt of a copy of the award.

Like the within case, *United Parcel Service, Inc. v. Mitchell, supra,* involved a § 301 suit by an employee against both his employer and his union. Alleging that he had been wrongfully discharged, the employee submitted his grievance to a union-management arbitration panel which upheld the discharge. Seventeen months later, the employee filed suit against his employer and his union in the United States District Court for the Eastern District of New York. Ruling that plaintiff's action was properly characterized as one to vacate an arbitration award, the court granted summary judgment in favor of the employer and the union on the ground that the action was barred by New York's 90-day statute of limitations for actions to vacate arbitration awards. The employee appealed and the Court of Appeals for the Second Circuit reversed, holding that the District Court should have applied New York's six-year limitations period for actions alleging breach of contract. The Supreme Court rejected the Second Circuit's analysis and reinstated the trial court's dismissal.

Critical to the Court's analysis of which state statute of limitations should be applied was its perception that § 301 claims are neither standard contract nor standard tort actions, but rather "creatures of 'labor law'", *Mitchell* 451 U.S. at 63, 101 S.Ct. at 1564. Despite the fact that an employee's

claim against his employer is based on a contractual collective bargaining agreement, the Supreme Court held that it is not sufficient for the employee to prove merely that he was discharged in violation of the agreement to have resort to the federal courts.

Rather, as the *Mitchell* Court stated, because decisions reached pursuant to such agreements are final and binding on all parties, "the indispensable predicate for such an action is . . . a demonstration that the Union breached its duty of fair representation." *Id.* at 62, 101 S.Ct. at 1563. In emphasizing such a showing, the Court was acknowledging the rationale of collective bargaining agreements which is to promote an expeditious and inexpensive process for privately resolving labor disputes. Moreover, by imposing a relatively short statute of limitations on actions to reverse grievance decisions, the *Mitchell* Court insured the finality of such decisions, and thereby furthered the internal grievance mechanism itself. *Id.* at 62–64, 101 S.Ct. at 1563–64.[1]

Plaintiff Francis contends that *Mitchell* is inapplicable to her case because her grievance was not submitted to arbitration. This argument is defective because it ignores the underlying rationale of *Mitchell,* which is that final and binding decisions should not be "suspended in limbo for long periods." *Id.* at 64, 101 S.Ct. at 1564; *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). The precise point at which a union allegedly breached its duty of fair representation is irrelevant under *Mitchell.* As one court stated:

The well established federal policy favoring the arbitration of labor disputes, *Gateway Coal Co. v. UMW,* 414 U.S. 368, 377 [94 S.Ct. 629, 636, 38 L.Ed.2d 583] (1974), derives from section 203(d) of the Labor Management Relations Act of 1947, 29 U.S.C. § 173(d) (1970):

Final adjustment by a method agreed upon by the parties is declared

---

1. *But see Mabane, et al. v. Metal Masters Food Service Equipment Co.,* 541 F.Supp. 981 (D.Md. 1982). In *Mabane* no grievances had been filed with the union and therefore no final and binding decision had been reached prior to commencement of suit. *Id.* at 985.

to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement.

It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.

*United Mine Workers, etc. v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3d Cir. 1977).

█ Thus, if a union fails to process a grievance, *Cade v. Bethlehem Steel,* Civil No. JH–80–3332 (January 22, 1982) (Howard, J.); or withdraws a grievance prior to arbitration, *Ford v. B. P. Oil Co., supra,* and *Ross v. Bethlehem Steel, supra,* the 30-day statute of limitations will apply. Under *Mitchell,* for a grievance to be "submitted to arbitration" for the purpose of applying the shorter limitations period, the dispute need not actually be passed on by an independent arbitrator or proceed to the final step of a contractual grievance procedure. It is sufficient if a final and binding decision is reached at any stage of the contractual grievance procedure. *Davidson v. Roadway Express, Inc.,* 650 F.2d 902 (7th Cir. 1981); *Fields v. Babcock and Wilcox,* 108 LRRM 3150 (W.D.Pa.1981).

█ Accordingly, because the Company's decision became final through the operation of the collective bargaining agreement grievance procedure, *Mitchell* requires application of Maryland's 30-day statute of limitations. As the within suit was filed well beyond that period, defendants' motions for summary judgment will be granted.

The Court will enter a separate order.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 14th day of October, 1982, by the United States District Court for the District of Maryland,

ORDERED:

1) that the summary judgment motions of defendants Koppers Company, Inc., International Association of Machinists and Aerospace Workers, AFL–CIO, and Local Lodge # 1784, shall be, and the same hereby are, GRANTED;

2) that plaintiff's motions to compel production of documents shall be, and the same hereby are, DENIED as moot;

3) that defendants' motions to strike prayer for punitive damages, for protective order staying all discovery, to suspend scheduling order and postpone trial date, to strike demand of plaintiff for jury trial, and to bifurcate trial issues, shall be, and the same hereby are, DENIED as moot;

4) that defendant Koppers Company's motions for protective order and for suspension of scheduling order of court, and to strike demand of plaintiff for jury trial and to bifurcate trial issues, shall be, and the same hereby are, DENIED as moot; and

5) that the Clerk of the Court shall mail copies of the foregoing Memorandum and this Order to all parties.