Carolyn J. SPILLE

v.

C & P TELEPHONE COMPANY.

Civ. No. K-81-1196.

United States District Court,
D. Maryland.

Dec. 29, 1982.

Carolyn J. Spille, in pro. per.

Robert J. Hallock, Baltimore, Md., Bernard M. Dworski, Wilma R. McCarey and Charles M. Carron, Washington, D.C., for defendant.

FRANK A. KAUFMAN, Chief Judge.

Plaintiff, proceeding *pro se*, instituted the within suit against The Chesapeake & Potomac Telephone Company of Maryland on April 13, 1981, in the District Court of Maryland for District 9, Harford County, alleging "falsification" by defendant of certain of defendant's 1961 and 1962 personnel and payroll records concerning plaintiff. Plaintiff seeks damages, to be "re-instated with no loss of seniority in employment" and to have appropriately corrected the defendant's records relating to her seniority.

Defendant timely removed this case to this Court, *see* 28 U.S.C. § 1446(b), on the ground that it involves an alleged violation of the collective bargaining agreement between defendant and the union representing defendant's employees, including plain-

tiff, the Communications Workers of America, AFL–CIO (the Union). Diversity jurisdiction is absent. However, federal question jurisdiction is present under Section 301(a) of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a), since the substance of plaintiff's claim is seemingly governed by the applicable collective bargaining agreement. Therefore, defendant's removal of this case to this Court was appropriate under 28 U.S.C. § 1441(b).

Plaintiff was hired by defendant as an operator on June 11, 1956. She subsequently worked as a service assistant and as a service evaluator. In June 1979, the Union filed a grievance on behalf of plaintiff, alleging that defendant had made an erroneous entry in her personnel file, allegedly leading to an incorrect service date for seniority purposes. No relief was obtained by the Union on behalf of plaintiff during all of the available steps of the grievance procedure under the applicable and then-effective 1977 collective bargaining agreement between defendant and the Union. The grievance matter was concluded in October 1979.

Defendant has filed a motion for summary judgment, contending that the within action is barred by limitations. Since Congress has not enacted a statute of limitations governing actions brought pursuant to section 301, "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the most appropriate state statute of limitations." *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966) (Stewart, J.) (footnote omitted).

█ Plaintiff alleges that defendant wrongfully violated plaintiff's rights in 1961 and 1962. Whether those claims by plaintiff are viewed as stated in contract or in tort, and whether or not they are grounded, as they appear to be, upon the collective bargaining agreement and thus are subject to the thirty-day bar of Md.Cts. & Jud.Proc. Code Ann. § 3–224(a)(1) for the reasons discussed *infra,* they are in any event barred by the three-year Maryland limitations provision applicable to civil actions

generally. Md.Cts. & Jud.Proc.Code Ann. § 5–101.

█ It may also be, however, that plaintiff is contending that the outcome, in and of itself, of the grievance proceedings conducted in 1979 deprived her of her seniority rights. Even if such alleged 1979 wrongdoing is considered as separate from the 1961 and 1962 allegations and is not barred by the aforementioned three-year limitations provision, the alleged 1979 actions of defendant occurred within the grievance procedure of the applicable collective bargaining agreement. Accordingly, any attack by plaintiff on those 1979 actions of defendant are barred, for the reasons discussed *infra,* by the thirty-day limitations provision of Md.Cts. & Jud.Proc.Code Ann. § 3–224(a)(1).

In the within case, the Union filed a grievance on plaintiff's behalf on June 29, 1979, with regard to plaintiff's claims that information in her personnel file and her service date for seniority purposes were incorrect. The collective bargaining agreement between defendant and the Union provided for a three-step grievance procedure for the resolution of disputes arising under the agreement. Article 12, section 1(f) of that agreement provided that the grievance and arbitration procedure was the exclusive method for the settlement of such disputes:

(f) *Method of Settling Grievances:* It is agreed that neither the Company, its representatives, nor the Union, the Locals, their representatives or members, will attempt by means other than the grievance procedure to bring about the settlement of any issue which is properly a subject for disposition through the grievance or arbitration procedures.

Additionally, the agreement provided that a grievance would be considered to be "finally disposed of" if not timely appealed to the next higher step. Article 12, section 1(d) stated:

(d) *Grievance Terminated Unless Appealed:* At the conclusion of any step in

the grievance procedure, the grievance shall be considered as finally disposed of unless it is appealed to the next higher step within the time limits specified in Section 2 of this Article.

In the within case, plaintiff's grievance was heard at all three steps of the grievance procedure, the third and final step occurring on October 31, 1979, when the defendant denied the grievance. Article 13, section 1, of the agreement provided that "[i]f the parties remain in disagreement at the conclusion of the steps provided in Article 12 [Grievance Procedure], then the Union may within two weeks submit the grievance to arbitration upon written notice to the Company." After the adverse determination of October 31, 1979, the Union did not submit plaintiff's grievance to arbitration within the two weeks provided for by the agreement. Accordingly, the determination against plaintiff's grievance became final on or about November 14, 1979.[1]

In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the union filed a grievance in Mitchell's behalf contesting his discharge. Pursuant to the applicable collective bargaining agreement, that grievance "was submitted to a [grievance] panel ... composed of three union and three company representatives," *id.* at 58, 101 S.Ct. at 1561, which upheld Mitchell's discharge. "Under the collective-bargaining agreement this decision was 'binding on all parties.' " *Id.* Under those circumstances, Justice Rehnquist concluded that Mitchell's subsequent court action was "more analogous to an action to vacate an arbitration award than to a straight contract action." *Id.* at 62, 101 S.Ct. at 1563 (footnote omitted). Accordingly, the Justice held that the applicable limitations period for Mitchell's section 301 claim against his employer was the relevant state's ninety-day limitations period for actions to set aside arbitration awards and not the longer limitations period provided by that state for breach of contract actions.

In *Sine v. Local 992, International Brotherhood of Teamsters,* 644 F.2d 997 (4th Cir.) *cert. denied,* 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981), Judge Widener, in an opinion antedating the Supreme Court's decision in *Mitchell,* applied Md.Cts. & Jud. Proc.Code Ann. § 3–224(a)(1) to a suit by several employees against the employer and the unions under section 301 of the LMRA in which those employees sought to vacate an arbitration award rendered by an impartial arbitrator.

In *Davidson v. Roadway Express, Inc.,* 650 F.2d 902 (7th Cir.1981), *cert. denied,* 455 U.S. 947, 102 S.Ct. 1447, 71 L.Ed.2d 661 (1982), the Seventh Circuit, in the light of *Mitchell,* applied Indiana's ninety-day limitations period for actions to vacate an arbitration award in a suit by an employee against his employer alleging wrongful discharge in violation of the applicable collective bargaining agreement, a claim that had been adversely determined against the employee in a binding grievance proceeding but which had not been the subject of arbitration.

The reasoning of *Mitchell,* as applied in *Davidson,* is directly applicable to the instant situation. Plaintiff's grievance presenting the same issues she originally stated herein was adversely determined against her in a final and binding grievance proceeding which the parties to the applicable collective bargaining agreement agreed was the exclusive method for resolution of disputes arising under that agreement. Herein, plaintiff, dissatisfied with the outcome of the 1979 grievance determination against her, simply seeks to reverse that determination. Because that adverse determination of plaintiff's grievance became final on or about November 14, 1979, the within action, instituted on April 13, 1981, is

---

1. If arbitration had been sought and had taken place, then Article 13, section 2(e) would have been applicable. That provision states that if a grievance is submitted to arbitration, "the decision of the Board [of Arbitration], which shall contain a full statement of the grounds upon which the issue or issues have been decided, shall be final and Union, Locals, their representatives, employees and Company agree to abide thereby."

untimely filed and, accordingly, is time-barred.[2]

During the final motion hearing in this case, plaintiff, proceeding *pro se,* stated, "I would like to add at the end of the grievance procedure my supervisor, Gwen Mason, stated the company was going to terminate me."[3] Defendant has denied that any such statement was ever made or that plaintiff was in any other way threatened by defendant with retaliation for filing grievances.[4] Defendant states that plaintiff elected to be terminated,[5] that she declined relocation to Washington, D.C., that plaintiff also declined eleven alternative positions, and that plaintiff received a termination allowance of $16,273.50 pursuant to the union's agreement with defendant.[6]

Whether or not plaintiff has made out a claim of wrongdoing by defendant during the 1979 grievance proceeding,[7] plaintiff is barred from litigating such a claim in the present action. Plaintiff did not raise that alleged wrongdoing in the 1979 grievance proceeding. Nor has plaintiff at any time instituted a new grievance proceeding, or sought arbitration, in connection therewith. Further, even assuming plaintiff could have instituted a separate court case after that alleged wrongdoing in 1979, without first exhausting grievance and arbitration opportunities under the collective bargaining agreement,[8] plaintiff did not do so within the thirty-day limitations period applicable herein with regard to wrongdoing claimed to have occurred during and intertwined with the 1979 grievance proceeding. Defendant has referred to that limitations period and is entitled successfully to assert it as a bar to all of the relief plaintiff seeks herein.

For the reasons set forth *supra,* summary judgment will be entered in favor of defendant.

---

**2.** Plaintiff is proceeding herein only against the defendant employer. Thus, there is no need to determine herein which Maryland limitations period would be applicable in an action against the Union for breach of its duty of fair representation. *See Sine v. Local 992, International Brotherhood of Teamsters,* 644 F.2d 997 (4th Cir.1981); *Mabane v. Metal Masters Food Service Equipment Co.,* 541 F.Supp. 981 (D.Md. 1982).

**3.** *See* Memorandum of this Court to Plaintiff and Counsel for Defendant, p. 1, para. (2).

**4.** *See* affidavit of Gwen Mason at paras. 6 & 7.

**5.** Plaintiff put the date of her termination as June 24, 1980.

**6.** *See* affidavit of Gwen Mason at para. 5.

**7.** *Cf. Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981), holding that the tort of abusive discharge is recognized by Maryland law.

**8.** *See Vaca v. Sipes,* 386 U.S. 171, 182–83, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967).